[Cite as *Blevins v. Figueroa*, 2022-Ohio-1907.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| NICOLAS BLEVINS, | : | | JUDGES: |
| | : | | Hon. John W. Wise, P.J. |
| Plaintiff - Appellant | : | | Hon. Patricia A. Delaney, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| ROMONITA FIGUEROA, | : | | Case No. CT2021-0049 |
| | : | | |
| Defendant - Appellee | : | | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Muskingum County
Court of Common Pleas, Domestic
Relations Division, Case No.
DE2015-0207

JUDGMENT:          Affirmed

DATE OF JUDGMENT:       June 6, 2022

APPEARANCES:

For Plaintiff-Appellant        For Defendant-Appellee

BRIAN W. BENBOW        ROMONITA FIGUEROA, Pro Se
Benbow Law Offices        1056 Brandywine Blvd. Apt. F
265 Sunrise Center Drive      Zanesville, Ohio 43701
Zanesville, Ohio 43701

*Baldwin, J.*

{¶1} Nicolas Blevins, appellant, appeals the August 19, 2021 Judgment Entry of the Muskingum County Court of Common Pleas, Domestic Relations Division in which the court modified the shared parenting plan and permitted appellee, Ramonita Figueroa to relocate with their child to the State of Illinois.

## STATEMENT OF FACTS AND THE CASE

{¶2} Blevins and Figueroa are the parents of Y.F. (DOB 2/10/13). Blevins filed a complaint to allocate parental rights and responsibilities on March 13, 2015 and the trial court issued a Shared Parenting Decree on December 10, 2015. Relevant to this appeal are two provisions of the Shared Parenting Agreement approved by the trial court:

5.13 Travel

The minor child shall not be removed from the State of Ohio without the advance, written approval of the other parent.

5.14 Relocation

The parents agree that neither of them shall relocate with the child outside of Muskingum County, Ohio without prior Court approval.

{¶3} Figueroa filed a Notice of Intent to Relocate to Elgin, Illinois on May 26, 2021 alleging that she wanted to move because: "I have a better job opportunity and a better future with my kids. I am struggling with having someone to watch over my kids while I work. I have family in Illinois that are willing to help me out, unlike in Ohio I have no one that I can rely on." (Notice of Intent to Locate, May 26, 2021, p. 2).

{¶4} On July 27, 2021 Blevins moved for modification of parental rights and responsibilities asking that the court modify parental rights and responsibilities and

designate him as residential parent and legal custodian, or, in the alternative, modify the shared parenting plan so that the child would reside primarily with Blevins if Figueroa relocated to Illinois.

**{¶5}** The trial court conducted a hearing on August 16, 2021 to consider the notice of intent to relocate and the motion requesting a change of parental rights and responsibilities. The only witnesses to testify were the parties, and neither party entered exhibits into the record.

**{¶6}** On August 19, 2021 the trial court issued a lengthy entry reviewing the parties' testimony and issuing its findings. The trial court noted that the parties had worked cooperatively since 2015 to raise their child and that they agree upon important matters with regard to his care. The trial court found that Figueroa approached Blevins and requested assistance with child care, else she would have to move to Illinois where she would have the assistance of the father of her fifteen-year-old daughter as well as her daughter, a place to live and a job with more flexibility. Blevins refused, claiming that he was not given sufficient time to make the necessary arrangements, that she should find daycare and that she should not have taken a job that created this problem. Only when the parties came to the hearing did Blevins notify Figueroa that he had changed his work schedule so that he could provide the necessary care. He also stated he was willing to quit his job to care for Y.F.

**{¶7}** The court found that Blevins feared that Figueroa did not respect his rights as a father was refuted by her request for help with care so that she could remain in Ohio with the current parenting plan in place. The court also found that Blevins had a close relationship with their child, but that it was Figueroa that was the primary caregiver,

particularly during the school week.  In response to Blevins concerns that the relocation would harm the relationship, Figueroa agreed that their child would have ample visitation with Blevins "during his summer, spring and Christmas breaks from school, as well as other times." (Judgment Entry, Aug. 19, 2021, p. 3).

{¶8}   The trial court concluded its entry finding:

To terminate shared parenting and grant Nicolas sole custody would not be in the best Interest of this child. [Y.F.] needs both parents in his life, and will be able to maintain a good, positive relationship with his father even with the relocation.

Based upon the testimony and evidence presented, the Court finds the following modifications to the shared parenting plan to be in the best interest of the minor child * * *"

{¶9}   And thereafter the court described new terms for parenting time, granting Blevins parenting time during the bulk of summer, spring break and any scheduled three-day weekends with alternating Thanksgiving and Christmas Holidays.

{¶10}  Blevins appealed and submitted one assignment of error:

{¶11}  "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN PERMITTING MOTHER TO MOVE THE CHILD TO ANOTHER STATE WHEN THERE WAS THERE WAS INSUFFICIENT EVIDENCE IN THE RECORD TO JUSTIFY SUCH A DRASTIC MODIFICATION THAT WAS CONTARY (SIC) TO THE CHILD'S BEST INTEREST. THE RECORD IS DEVOID OF ANY EVIDENCE TO SUPPORT THE CONCLUSION THAT MODIFICATION OF THE SHARED PARENTING PLAN WAS IN THE CHILD'S BEST INTEREST WHEN THE ONLY REASON THE MOVING PARTY GAVE WAS THAT SHE

DID NOT LIKE LIVING IN OHIO. THE RECORD IS FURTHER DEVOID OF ANY EVIDENCE THAT THE HARM TO THE CHILD FROM A MODIFICATION OF THE SHARED PARENTING PLAN WAS OUTWEIGHED BY THE NONEXISTENT ADVANTAGES OF SUCH A MODIFICATION. THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT APPLYING THE REQUIRED BEST INTEREST FACTORS. THE TRIAL COURT'S DECISION WAS FURTHER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTARY(SIC) TO LAW."

**{¶12}** Appellee Figueroa did not file a brief in this matter and did not appear for oral argument.

### STANDARD OF REVIEW

**{¶13}** Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *DiDonato v. DiDonato*, 5th Dist. Tuscarawas No. 2015 AP 07 0042, 2016-Ohio-1511, 63 N.E.3d 660, ¶ 44, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Id.*, quoting *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386, 2001 WL 1141268.

**{¶14}** The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially

crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). We are mindful that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court should be guided by the presumption that the trial court's findings were correct. See, *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶15} We are also mindful of the difference between a modification of "a prior decree allocating parental rights and responsibilities" and a modification or termination of a "shared parenting plan." *Hall v. Hall*, 4th Dist. Adams No. 16CA1030, 2017-Ohio-8968, ¶ 21-27. R.C. 3109.04(E)(1)(a) governs "a prior decree allocating parental rights and responsibilities" and does not allow a trial court to modify it unless a change has occurred in the circumstances and the modification is needed to serve the best interest of the child. "Thus, 'before a modification can be made pursuant to R.C. 3109.04(E)(1)(a), the trial court must make a threshold determination that a change in circumstances has occurred.' " *Id.* at ¶ 22, quoting *Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067, 2009–Ohio–3787, ¶ 9, quoting Fisher v.  Hasenjager, 116 Ohio St.3d 53, 2007–Ohio–5589, 876 N.E.2d 546, syllabus. "If a change of circumstances is demonstrated, the trial court must then determine whether the modification is in the best interest of the child." *Gunderman* at ¶ 9.

{¶16} However, a trial court may modify the terms of a "shared parenting plan" if the court determines the modifications are in the child's best interest. R.C.

3109.04(E)(2)(b). There is no requirement that a threshold determination of a change in circumstances be met. *Hall, supra* at ¶ 24.

## ANALYSIS

{¶17} Blevin's single assignment of error is directed toward the trial court's decision to not prohibit Figueroa from moving to Illinois and the changes imposed upon the parenting time as a result. The assignment of error does not object to the trial court's conclusion that the change in the designation of residential parent requested by Blevins was not in the child's best interest, and Blevins concedes that he is not appealing that judgment, so we will limit our analysis to Figueroa's notice to relocate and the trial court's findings relevant to that notice.

{¶18} R.C. 3109.051(G)(1), which governs the procedure for relocation, provides:

If the residential parent intends to move to a residence other than the residence specified in the parenting time order or decree of the court, the parent shall file a notice of intent to relocate with the court that issued the order or decree. Except as provided in divisions (G)(2), (3), and (4) of this section, the court shall send a copy of the notice to the parent who is not the residential parent. Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child.

{¶19} The burden rests with the party seeking to relocate to establish that relocation and a change of school districts is in the best interest of the children. *Salisbury*

*v. Salisbury*, 11th Dist. Portage Nos. 2005–P–0010 and 2005–P–0084, 2006–Ohio–3543, ¶ 101. The trial court is permitted to look at the best interest factors set forth in R.C. 3109.04(F)(1) when the terms of the court order do not provide a standard for the trial court to employ in making its determination. *Zimmer v. Zimmer*, 10th Dist. Franklin No. 00AP–383, 2001–Ohio–4226, *4.

**{¶20}** Blevins includes citations to several cases in support of his argument that the trial court's analysis was faulty, but much of the authority cited by Blevins is applicable to a change in parental rights and responsibilities, but as Blevins admits, his request to modify parental rights and responsibilities was denied and no appeal was taken from that order. The authority Blevins relies upon in his brief is, therefore, inapposite. Instead we must consider the Notice to Relocate, the requirements of R.C. 3109.051 and the trial court's findings regarding the best interest of Y.F.

**{¶21}** Blevins argues that Figueroa wanted to leave Ohio because she did not like living in Ohio and that she "provided no other concrete reasoning." (Appellant's Brief, p.1), but the record belies that assertion. Figueroa did testify that her move to Illinois was motivated by her dislike of where she was currently living, but she also described the opportunity for more flexible employment and support of family members, her fifteen-year-old daughter and her father as well as grandchildren and a godmother. Figueroa explained that the father of her daughter manages three pizza restaurants in Illinois and has offered her a job that she can begin immediately and a place to stay until she can find an apartment. She explained that her new position would allow her a flexible schedule permitting her more time with Y.F. and eliminate the need for day care. Further, the work was not as strenuous as her current employment. She mentioned that she has

had surgery on her arm which is impacted by her current job and will not be affected by her planned employment in Illinois.

**{¶22}** Figueroa also mentioned that she had maintained contact with her daughter for the last twelve years by meeting at a point halfway between her home in Ohio and her daughter's home in Elgin. She expressed a willingness to do the same for Blevins and encourage visits whenever possible.

**{¶23}** The trial court found that Blevins and Figueroa were cooperative and communicated well when it came to the care of their child, but it is evident in the record that Figueroa was having difficulty locating affordable childcare. The trial court noted that Figueroa did not make the decision to relocate in a vacuum, but had requested Blevins assistance with child care with the caveat that, should he not be able to assist her, she would move to Illinois where she was have the flexibility of employment and the support of family. Only after Blevins rejected her request did she file the notice to relocate. While Blevins counsel did state at the hearing that his client had recently changed his schedule to accommodate Figueroa's request, Blevins did not make the details of his offer clear during the hearing. He did state that he would be willing to quit his job to care for Y.F., but he did not offer a cogent plan regarding how he would be able to provide for Y.F. if he was unemployed.

**{¶24}** After reviewing the testimony, the trial court concluded that "To terminate shared parenting and grant Nicolas sole custody would not be in the best interest of this child. [Y.F.] needs both parents in his life, and will be able to maintain a good positive relationship with his father even with the relocation." Judgment Entry, Aug. 21, 2021, p. 4. The trial court further found that alteration of the parenting schedule was in the best

interest of Y.F. and described a schedule that provided significant time for Blevins to have Y.F. in his home during school holidays and breaks.

**{¶25}** While the trial court did not expressly state that the move was in the best interest of Y.F. we find that judgment entry clearly implies that conclusion and that the facts support that result. Figueroa, the primary residential parent, and Y.F. will benefit from more flexible employment that will eliminate the need for daycare and scheduling and expense and will receive the support of family not available to them in Ohio. Parenting time will change, but there was little evidence that the change would create a material detriment to the child.

**{¶26}** We find that the trial court's decision was not unreasonable, arbitrary or unconscionable and the decision was not an abuse of discretion. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶27}** Blevins sole assignment of error is overruled and the decision of the Muskingum County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Delaney, J. concur.